**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TERRY A. ANDERSON,**

**Plaintiff,**

**v.**

**CORRECTIONS OFFICER B. HILT, *et al.*,**

**Defendants.**

**Case No. 2:25-cv-1433**

**Judge Algenon L. Marbley**
**Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss. (Doc. 9). For the following reasons, the Undersigned **RECOMMENDS** that the Motion be **DENIED**.

## I. BACKGROUND

Plaintiff Terry Anderson, proceeding *pro se*, filed this case in December 2025. (Doc. 1). His original complaint, brought under 42 U.S.C. § 1983, alleges that Defendants violated his Eighth Amendment rights. (Doc. 1-1). The Court then screened the complaint under 28 U.S.C. § 1915(e)(2)(B) and permitted the following claims to proceed: an Eighth Amendment excessive force claim against Defendant Hilt and Eighth Amendment failure to protect/failure to intervene claims against Defendant Carpenter, Jr. and Defendant Carpenter, Sr., both based on the June 2025 incident. (Doc. 6 at 3, 6–7; Doc. 11). Defendants note that Plaintiff incorrectly identified Vincent Carpenter as "Carpenter, Jr." and William Carpenter as "Carpenter, Sr." (Doc. 9 at 1). For clarity, the Court will refer to these Defendants as V. Carpenter and W. Carpenter.

Plaintiff alleges that on June 9, 2025, he was heading to the cafeteria for lunch, then to an afternoon class. (Doc. 1-1 at 4). As Plaintiff passed the shed where Defendant Hilt and Defendant W. Carpenter were posted, Defendant Hilt stopped Plaintiff and asked him where he was going.

(*Id.*). After a brief exchange in which Defendant Hilt and Plaintiff argued about whether Plaintiff's ID was the correct badge color for going to school, Defendant Hilt allegedly refused to confirm Plaintiff's right to attend educational classes that day. (*Id.*). When Plaintiff asked to "speak to a white shirt," Defendant Hilt instructed him to turn around so he could handcuff him. (*Id.*). Plaintiff alleges that as Defendant Hilt was handcuffing him, Hilt stated, "your a-- don't learn do you," before tightening the handcuffs to a painful extreme and twisting his right hand "as if he were trying to break my wrist." (*Id.*). Plaintiff reports that his fingertips and hand went numb instantly, his wrist was in serious pain, and he pulled away from Defendant Hilt because of the pain. (*Id.*).

Plus, Plaintiff asserts that Defendant W. Carpenter was present during this incident yet did nothing to "prevent or intervene" Hilt's use of force. (*Id.*). Finally, Plaintiff contends that Defendant Hilt "handed him off" to Defendant V. Carpenter, who escorted Plaintiff to the captain's office. (*Id.* at 5). While Plaintiff does not specifically describe how Defendant V. Carpenter was involved in the June 2025 incident, he does assert that Defendant V. Carpenter "failed to intervene when he was present, had reason to know of the force being used, and had an opportunity to intervene, also the means to prevent the harm from occurring. In which he did not do." (Doc. 1-1 at 3). Plaintiff describes lasting effects from the handcuffing. He has difficulty using his right hand, reporting that simple tasks are now difficult because his right hand "feels as if [it] [is] falling asleep, due to the numbness, and tingling that is constant[.]" (Doc. 1-1 at 6). The Court found these allegations sufficient for Defendant V. Carpenter to remain in this suit at the initial screening stage. (Doc. 6 at 7; Doc. 11).

Plaintiff also complains about the medical treatment he received. He asserts that he received medical treatment in the form of "Tylenol, Ibuprofen, Steroids, a Splint, and Ace Bandages," and was told that the pain will go away eventually. (Doc. 1-1 at 6). But it has not yet.

(*Id.*). He alleges that he also requested and was denied an opportunity for independent medical evaluation. (*Id.*). As for the Belmont Correctional Institution medical staff, he alleges they conducted an MRI of his wrist and "recommended further testing about the numbness in [his] hand, to be conducted at a later date." (*Id.* at 7). From the allegations, it is unclear if this happened.

For relief, Plaintiff seeks declarative and injunctive relief, monetary damages, a jury trial, an internal investigation and disciplinary charges against each Defendant, termination of Defendants' employment, Plaintiff's costs and fees in this suit, and for any additional relief this court deems just, proper, and equitable. (*Id.* at 9). In the initial screen, the Court dismissed Plaintiff's claims against Defendants in their official capacities to the extent Plaintiff sought money damages. (Doc. 6 at 7; Doc. 11).

Following service (Doc. 12), Defendants filed a Motion to Dismiss (Doc. 9). This matter is fully briefed and ready for consideration. (Docs. 15, 16).

## II. STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations"

are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

While the Court holds pleadings by *pro se* individuals "to less stringent standards than formal pleadings drafted by lawyers," the complaint must still "contain either direct or inferential allegations respecting all the material elements" of a plaintiff's claims to survive a motion to dismiss. *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (internal quotations omitted). Worded differently, although pro se complaints are construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III. DISCUSSION

Defendants offer several reasons why the Court should dismiss Plaintiff's claims. The Undersigned finds none of them persuasive.

### A. Failure to State a Claim

The Undersigned first addresses Defendants' assertion that Plaintiff did not sufficiently plead his failure to protect/failure to intervene claim. (Doc. 9 at 13–15). The Court initially construed Plaintiff's Eighth Amendment claims as failure to protect or failure to intervene, but after the benefit of briefing, it is clear that Plaintiff brings a failure to intervene claim. (Doc. 15 at 8, 12, 16 (citing failure to intervene standard)).

To plead a cause of action under 42 U.S.C. § 1983, a plaintiff must plead two elements: "(1) a deprivation of a right secured by the Constitution or law of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). To plead the second element sufficiently, a plaintiff must allege that each defendant had "personal involvement" in the deprivation of his

rights. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted); *see also Johnson v. ODRC*, No. 1:23cv39, 2023 WL 4084830, at *4 (S.D. Ohio June 20, 2023) ("It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 for alleged constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct." (citation omitted)), *report and recommendation adopted*, 2023 WL 5275384 (S.D. Ohio Aug. 16, 2023). Further, the Sixth Circuit has "consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556 (6th Cir. 2011) (citation omitted). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts . . . and indicate what each defendant did to violate his rights." *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citations omitted). At base, "[c]onclusory allegations of unconstitutional conduct are insufficient to state a § 1983 claim; a complaint must contain either direct or inferential factual allegations as to each individual defendant." *Peace v. Carter*, No. 2:24-CV-4237, 2025 WL 3763825, at *5 (S.D. Ohio Dec. 30, 2025).

An officer is liable for failure to intervene "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citation omitted). This law applies in equal measure to corrections officers. *See Batson v. Hoover*, 788 F. App'x 1017, 1021–22 (6th Cir. 2019); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) ("[A] correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating.").

Here, construing Plaintiff's Complaint liberally, the Undersigned finds that Plaintiff has plausibly alleged a failure to intervene claim against Defendants W. Carpenter and V. Carpenter. Plaintiff alleges that he was approaching a shed where Defendants Hilt and W. Carpenter were posted and that W. Carpenter "did nothing to prevent nor intervene in Hilt use of force." (Doc. 5 at 4). The combination of these allegations allows the Undersigned to infer that W. Carpenter was there during the alleged excessive force incident and, notably, had the opportunity and means to prevent the force. *See Barhite*, 377 F. App'x at 510 (the complaint must still "contain either direct or inferential allegations respecting all the material elements" of a plaintiff's claims to survive a motion to dismiss). So too with V. Carpenter. Plaintiff reports that V. Carpenter "failed to intervene when he was present, had reason to know of the force being used, and had an opportunity to intervene also the means to prevent the harm from occurring" and "Hilt then, handed me over to" V. Carpenter. (Doc. 5 at 3, 5).

Defendants' arguments to the contrary fall short. At best, it appears Defendants contend that Plaintiff failed to allege sufficient personal involvement. (Doc. 9 at 7–8 (citing requirement that a plaintiff must identify how each defendant was involved in the alleged constitutional violations and arguing that "[t]o the extent Plaintiff seeks to impose liability on these Defendants based solely on their presence . . . or a general failure to act, such allegations cannot sustain a § 1983 claim")). This misses the mark. A failure to intervene claim is premised on an individual's presence without action. *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) ("An officer is liable for failure to intervene "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.") (citation omitted). *See also Batson v. Hoover*, 788 F. App'x 1017, 1021–22 (6th Cir. 2019); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) ("[A]

correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating.").

As noted above, Plaintiff alleged enough that the Undersigned can infer that Defendants W. Carpenter and V. Carpenter were present and did not act when they should have when Defendant Hilt purportedly used excessive force while handcuffing Plaintiff. (*See* Doc. 5 at 3–5). *C.f. Barber v. Jenson*, No. 1:24-CV-1160, 2024 WL 4850097, at *6 (W.D. Mich. Nov. 21, 2024) (finding plaintiff failed to state a failure to intervene claim when he did not allege any facts to show defendants were present during another defendant's alleged use of force). While Plaintiff's factual allegations may not have yet developed to a point to survive a more stringent standard, such as summary judgment, at this early stage of the litigation—and giving Plaintiff the deference owed to a *pro se* complainant—his claims may proceed. *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] *pro se* complaint, however inartfuly pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." ) (citation omitted).

### B. Administrative Remedies, *Respondent Superior*, Excessive Force, and Qualified Immunity

Turning to Defendants' other arguments, each likewise fails.

First, Defendants contend that Plaintiff failed to exhaust his administrative remedies. (Doc. 9 at 4–7). Yet, in response, Plaintiff offered six grievance reports. (Doc. 15 at 10–11, 19–31). In reply, Defendants do not address the reports. The Court, therefore, declines to dismiss Plaintiff's complaint on exhaustion grounds at this stage.

Second, Defendants seek dismissal of Defendants V. Carpenter and W. Carpenter because they interpret Plaintiff's Complaint as alleging *respondeat superior* liability against them. (Doc. 9 at 7–10). In opposition, Plaintiff clarifies that his "Eighth Amendment claims are not premised upon respondeat superior liability." (Doc. 15 at 13 (emphasis in original)). Defendants again

ignore Plaintiff's clarification and instead reiterate their *respondeat superior* arguments. (Doc. 16 at 3–6). Unlike Defendants, the Court will take Plaintiff at his word and does not construe his complaint as relying on *respondeat superior* liability.

Third, Defendants argue for the first time in reply that Plaintiff fails to state an excessive force claim. They, however, waived this argument by failing to raise it in their motion. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e have found issues to be waived when they are raised for the first time . . . in replies to responses.").

Fourth, and finally, Defendants briefly raise the defense of qualified immunity. (Doc. 9 at 15–16). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts use a two-prong test to resolve claims of qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citation omitted)). First, a Court must determine if "the facts alleged make out a violation of a constitutional right." *Id.* Second, a Court must determine whether "the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct" constituted a constitutional violation. *Id.*

Defendants' arguments address only this first prong, arguing that Plaintiff has failed to allege facts which make out a violation of a constitutional right. (Doc. 9 at 15–16). For the reasons described above, the Undersigned finds that this is not the case. At least at this early stage of litigation, and with limited development of the qualified immunity arguments by Defendants, the Undersigned does not find that Defendants' Motion should be granted on qualified immunity grounds. *See Brown-Austin v. Chambers-Smith*, No. 1:24-CV-397, 2025 WL 2022262, at *17

(S.D. Ohio July 18, 2025), *report and recommendation adopted*, No. 1:24-CV-397, 2025 WL 2615030 (S.D. Ohio Sept. 10, 2025) (citing *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)) ("Although a defendant's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.'").

***

In sum, Plaintiff has sufficiently pled his Complaint to survive the pleadings stage. The Undersigned therefore **RECOMMENDS** that Defendants' Motion to Dismiss should be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 9) be **DENIED**.

IT IS SO ORDERED.

Date: August 21, 2026

/s/Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a forfeiture of the right to have the district judge review the Report and Recommendation *de novo* and in a forfeiture of the right to appeal the decision of the District Court adopting the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).